UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :
  GNOBO GNOPO,                                      :
                                    Plaintiff,      :
                                                    :        24 Civ. 7262 (LGS)
            -against-                               :
                                                    :
  THE PERMANENT MISSION OF COTE                     :        **OPINION & ORDER**
  D'IVOIRE TO THE UNITED NATIONS IN                 :
  NEW YORK,                                         :
                                    Defendant.      :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Gnobo Gnopo ("Plaintiff") brings this action against the Permanent Mission of Côte d'Ivoire to the United Nations in New York ("Defendant" or the "Mission"), asserting claims for compensation arising out of Plaintiff's employment by the Ivoirian government. Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611. For the reasons below, Defendant's motion to dismiss is granted because the Court lacks subject matter jurisdiction.

## I.    BACKGROUND

The following facts are taken from the Complaint and the declarations submitted in connection with the parties' filings. *See Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024). These facts are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).[1]

Plaintiff is a citizen of the République de Côte d'Ivoire ("Côte d'Ivoire") and a member of the Ivoirian military. He joined the army in approximately 1989. Over time, Plaintiff rose

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

through the ranks, eventually reaching "Adjudant" -- a senior non-commissioned officer rank. Plaintiff was deployed by the Ivoirian Ministry of Defense to the Mission, located in New York. In August 2008, Plaintiff began serving as a driver for the Mission.  He was later promoted to Chief of Security.  Plaintiff's role included providing transportation and security services to the Mission.  Defendant contends that Plaintiff's engagement, termination and assignment of duties were governed exclusively by diplomatic and military authorities of Côte d'Ivoire and that "[n]on-governmental persons could not and did not control any of the incidents of Mr. Gnopo's military service."

Regarding his compensation, Plaintiff had an agreement with the Government of Côte d'Ivoire for a monthly salary of $2,700, which was later increased to $3,200, and then to $3,700, as he rose through the ranks.  Plaintiff was also to receive separate reimbursement for rent, utilities and medical insurance.  Plaintiff paid these expenses out of pocket and then submitted an invoice to the Government of Côte d'Ivoire for reimbursement each year.

In 2011, the Mission's Ambassador, Youssouf Bamba, directed Plaintiff to stop reporting to work.  Despite this directive, Plaintiff continued to receive a yearly salary and military promotions.  Around this time, the Government of Côte d'Ivoire declined to renew Plaintiff's visa, which had expired in 2010, leaving him without legal status in the United States.  From 2011 to 2019, the Mission only partially reimbursed Plaintiff's household expenses each year. These reimbursements were handled by the Mission's military advisors -- Colonel Affanou, Colonel Ouattara Karim and General Adjoumani -- allegedly acting on the Mission's behalf.

On September 18, 2019, General Adjoumani met with Plaintiff and other military personnel.  During this meeting, General Adjoumani, on behalf of Côte d'Ivoire, and Plaintiff

2

entered into what the Complaint describes as a "tolling agreement."  Per this agreement, Plaintiff allegedly was promised reimbursement of his outstanding out-of-pocket expenses and future household expenses and payment of his salary despite his not returning to work.  Plaintiff's diplomatic status would be terminated, and his visa would not be renewed.  In exchange, Plaintiff would refrain from working and would refrain from filing a lawsuit.  As of September 2019, Plaintiff's Statement of Liabilities to the Militaries -- which outlined the fees due to Plaintiff -- totaled approximately $189,229.18.  Despite the alleged September 2019 agreement, the Mission did not pay Plaintiff's outstanding invoices or otherwise compensate him for household expenses.

The Complaint contends that in 2021 the parties entered into another agreement under which the Mission allegedly agreed to pay Plaintiff's outstanding invoices.  Plaintiff allegedly presented his invoices to Ambassador Adom Kacou, who promised to pay what was owed by Côte d'Ivoire.  Despite this second agreement, the Mission did not compensate Plaintiff.  Plaintiff continued to receive his salary until November 2021.  Since November 2021, Plaintiff has not received any compensation or reimbursement from Defendant.  As of September 2024, Defendant allegedly owes Plaintiff $129,500 for past wages and $946,149.90 for out-of-pocket expenses.

Plaintiff filed the Complaint on September 26, 2024.  The Complaint alleges claims for breach of contract, account stated, quantum meruit and promissory estoppel.  Defendant moved to dismiss on March 6, 2025, challenging subject matter jurisdiction and personal jurisdiction.

## II.    LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction [under Rule 12(b)(1)] when the district court lacks the statutory or constitutional power to adjudicate it."  *AMTAX Holdings 227, LLC v. CohnReznick LLP*, 136 F.4th 32, 37 (2d Cir. 2025).  Courts must evaluate

3

subject matter jurisdiction on a claim-by-claim basis.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."); *accord Dolce v. Pezzola*, No. 23 Civ. 10049, 2025 WL 3652958, at *5 (S.D.N.Y. Dec. 17, 2025); *Price v. Hale Glob.*, No. 24 Civ. 2826, 2024 WL 4555942, at *1 (S.D.N.Y. Oct. 23, 2024).

In deciding a motion to dismiss for lack of subject matter jurisdiction, courts "must accept as true all material factual allegations in the complaint, but . . . may not draw any jurisdictional inferences in favor of the plaintiff."  *Blecher v. Holy See*, 146 F.4th 206, 216 (2d Cir. 2025).  "In addressing a claim of sovereign immunity, a court will start by considering the allegations of the complaint, but it may, in appropriate circumstances, consider matters outside the complaint as well."  *Nam v. Permanent Mission of Republic of Korea to United Nations*, 118 F.4th 234, 244 (2d Cir. 2024); *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *AMTAX Holdings*, 136 F.4th at 37.

Under the FSIA, a foreign state is presumptively immune from the jurisdiction of U.S. courts unless a statutory exception applies.  *See* 28 U.S.C. § 1604.  "A defendant seeking sovereign immunity bears the burden of establishing a prima facie case that it is a foreign sovereign."  *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559-60 (2d Cir. 2020).  Once met, "the burden shifts to the plaintiff to make an initial showing that an enumerated exception to sovereign immunity, [such as commercial activity,] applies."  *Id*. at 560.  The commercial activity exception to sovereign immunity allows for jurisdiction where a sovereign essentially acts as a private party by engaging in commercial activity.  *See* 28 U.S.C. § 1605(a)(2).  The "commercial

character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d); *NML Cap., Ltd. v. Republic of Arg.*, 680 F.3d 254, 257 (2d Cir. 2012). "To determine the nature of a sovereign's act, we ask whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *Id.* at 258; *Republic of Arg. v. Weltover*, 504 U.S. 607, 614 (1992). "[A] foreign state engages in commercial activity for purposes of the FSIA only where it acts in the manner of a private player within the market." *Attestor Master Value Fund LP v. Republic of Arg.*, 113 F.4th 220, 231 (2d Cir. 2024), *cert. denied sub nom. Republic of Arg. v. Attestor Master Value Fund LP*, 145 S. Ct. 1141 (2025).

## III.   DISCUSSION

The Mission has satisfied its burden of making a prima facie showing that it is a "foreign state." The FSIA defines "foreign state" to include an "agency or instrumentality of a foreign state," which in turn is defined as "any entity . . . which is a separate legal person" that meets certain other requirements. 28 U.S.C. § 1603(a)-(b). The declaration of Ambassador Tiémoko Moriko explains that the Mission "is not Côte d'Ivoire or a political subdivision of Côte d'Ivoire, and the 'Mission' is not and does not exist as an entity in and of itself." The Complaint treats its claims as against Côte d'Ivoire rather than against the Mission. In any event, because the Mission is not a separate legal entity, Plaintiff's claims are construed to be asserted against Côte d'Ivoire. *See Harvey v. Permanent Mission of Republic of Sierra Leone to United Nations*, 97 F.4th 70, 77 (2d Cir. 2024) ("A foreign state's permanent mission to the United Nations is indisputably the embodiment of that state."). As noted, in the Moriko Declaration, Côte d'Ivoire

5

is a sovereign nation and a member nation of the United Nations.  *See also* Fed. R. Evid. 201 (judicial notice of adjudicative facts).

The Complaint is dismissed for lack of subject matter jurisdiction because it challenges sovereign conduct that falls outside of the FSIA's commercial activity exception, which is the only exception to sovereign immunity that Plaintiff invokes.  As a foreign state, Côte d'Ivoire is presumptively immune from the jurisdiction of United States courts under the FSIA unless one of the statute's enumerated exceptions applies.  28 U.S.C. § 1604.  Plaintiff has not met his burden of showing that the commercial activity exception to sovereign immunity applies.  Whether conduct is commercial turns on the "nature" of the sovereign's relationship with the plaintiff and the acts giving rise to the claim.  *See Nam*, 118 F.4th at 243-44 (emphasizing that the commercial-activity inquiry turns on the nature of the sovereign's conduct and may require a nuanced, context-specific examination).  Here, Plaintiff seeks damages for his termination from duty, his loss of wages and other compensation.  These alleged damages arose from his deployment as an Ivoirian military officer, providing transportation and mission security, not from any private employment relationship.  Because the challenged conduct concerns sovereign management of military personnel, rather than market conduct by a private employer, the commercial activity exception does not apply.

Congress recognized this principle in the FSIA's legislative history, which states: "public or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or *military personnel*."  H.R. REP. No. 94-1487, at 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6615 (emphasis added); *Saudi Arabia v. Nelson*, 507 U.S. 349, 369 (1993) (White, J., concurring).  Courts assess mission-related employment disputes by looking to the

nature of the position and the sovereign acts at issue; in a number of cases, courts have treated chauffeur/security-type roles for diplomatic entities as governmental rather than commercial in nature. *See, e.g.*, *Bardales v. Consulate Gen. of Peru in N.Y.*, 490 F. Supp. 3d 696 (S.D.N.Y. 2020) (granting motion to dismiss against "personal assistant/chauffeur"); *Ayekaba v. Mba*, No. 18 Civ. 12040, 2019 WL 8989861, at *4 (S.D.N.Y. Nov. 25, 2019), *report and recommendation adopted*, 2020 WL 1130731 (S.D.N.Y. Mar. 6, 2020) (granting motion to dismiss against chauffeur for Permanent Mission of Equatorial Guinea); *Figueroa v. Ministry for Foreign Affs. of Swed.*, 222 F. Supp. 3d 304 (S.D.N.Y. 2016) (granting in part motion to dismiss against "office clerk/chauffeur" for Permanent Mission of Sweden). In *Nam*, for example, the Second Circuit reversed and remanded for a more context-specific analysis, noting that factors such as service to high-level officials, security clearance and coordination with law enforcement regarding security protocols may bear on whether the conduct is governmental rather than commercial. 118 F.4th at 246-47.

Here, a context-specific analysis shows that the relationship was governmental in nature. Plaintiff acted not only as a driver, but also as Chief of Security -- all the while serving as a deployed military officer of Côte d'Ivoire. Plaintiff does not dispute that he has served in the Ivoirian military since the late 1980s and that he continued to rise through the military ranks while assigned to support the diplomatic activities of the Mission. Nor does he dispute that he provided transportation and security services for the Mission, that he stopped working at the direction of the Ambassador and that he dealt with senior military advisors and diplomatic officials for his reimbursements and compensation. While Plaintiff contends that he did not hold diplomatic status, that distinction is not dispositive considering Plaintiff's military status and

7

continued promotions in rank during the relevant period.  *See Nam*, 118 F.4th at 238 (non-diplomat); *Bardales*, 490 F. Supp. 3d at 699 (same); *Ayekaba*, 2019 WL 8989861, at \*4 (same); *Figueroa*, 222 F. Supp. 3d at 308 (same).

Not only was Plaintiff serving as a deployed military officer, but the Complaint and declarations show that the acts at issue -- including Plaintiff's removal from service, visa non-renewal and compensation changes -- all occurred in connection with his military status.  The compensation Plaintiff seeks, $129,500 for past wages and $946,149.90 in reimbursement for out-of-pocket expenses, cannot be decoupled from his deployment.  "A state engages in commercial activity under the FSIA where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns."  *Attestor Master Value Fund*, 113 F.4th at 230-31.  "A private player within the market" cannot deploy military personnel nor can it determine diplomatic or security assignments.  *See id.* at 231.  These are "powers peculiar to sovereigns," and make the conduct governmental in nature.  *See Nelson*, 507 U.S. at 360-61.

The fact that Plaintiff did not report for duty after 2011 does not alter the FSIA analysis.  Even assuming Plaintiff ceased reporting for duty, FSIA immunity applies as long as his compensation and employment status remained grounded in his military commission.  The sovereign-immunity inquiry turns on the nature of the relationship and the character of the sovereign conduct at issue rather than the day-to-day mechanics of performance.  *See, e.g.*, *Nam*, 118 F.4th at 249 ("Here, a more nuanced examination of the context -- the hiring not just of 'a driver,' but of a driver for high-level officials of a foreign government amidst concerns of national security, the safety of foreign dignitaries, and diplomatic protocol -- was required.").

Plaintiff does not allege that he ever resigned or was discharged from the military.  Nor does he allege that he entered into a new, non-military employment agreement.  His continued rank-based salary and promotion within the military hierarchy after 2011 confirm his deployment.

The Complaint attempts to characterize the dispute as a breach of contract and labels the September 2019 promise to pay Plaintiff's salary and expenses a "tolling agreement."  But unlike *Figueroa*, where the court narrowly upheld jurisdiction based on a freestanding tolling agreement -- which was entered into during settlement talks, reduced to a written contract executed by counsel and preserved claims in exchange for confidentiality and service concessions -- the alleged agreement here arose directly from Plaintiff's continued military deployment.  In *Figueroa*, the tolling agreement was a distinct legal instrument, separate from the plaintiff's prior employment contract, in which the sovereign acted as a private counterparty and agreed to preserve all claims and defenses and maintain plaintiff's medical leave compensation while exploring settlement of unrelated discrimination and retaliation claims.  222 F. Supp. 3d at 317.

By contrast, the so-called September 2019 "tolling agreement" did not reflect a commercial transaction by a private market actor, but rather a sovereign's management of its military personnel.  Plaintiff did not agree to abstain from litigation in a separate bargained-for exchange distinct from his deployment.  Nor does the Complaint allege that the Mission waived sovereign immunity.  *See* 28 U.S.C. § 1605(a)(1) (exception to immunity by explicit or implied waiver); *Cap. Ventures Int'l v. Republic of Arg.*, 552 F.3d 289, 293 (2d Cir. 2009) ("explicit waiver" must be "clear and unambiguous"); *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 326 (2d Cir. 1993) ("implied waiver" is "construed narrowly" and must be "unmistakable and unambiguous"); *accord Jacubovich v. State of Isr.*, 816

9

F. App'x 505, 507 (2d Cir. 2020) (summary order).  Instead, the September 2019 agreement merely reiterated obligations flowing from Plaintiff's military status: Plaintiff would receive the compensation owed for his past deployment and continue his deployment through the retention of his military commission and rank-based salary.  Personnel decisions concerning military deployment like these are immune, even if cast in contractual terms.  *Cf. Nam*, 118 F.4th at 241-42, 247 (distinguishing *Figueroa* and noting that employment decisions may fall outside the FSIA's commercial activity exception depending on the nature of the sovereign's conduct).  Because the Mission's actions were sovereign in nature, the commercial activity exception does not apply.

The Complaint is dismissed for lack of subject matter jurisdiction.  As the Court lacks jurisdiction to adjudicate the dispute, Defendant's alternative arguments regarding service and personal jurisdiction are not addressed.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint for lack of subject matter jurisdiction is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 27, and to close the case.

Dated: February 20, 2026
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

10